IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ANTHONY SCOTT DEAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 116-036 |
| | ) | |
| TREVONZA BOBBITT, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at Georgia State Prison in Reidsville, Georgia, brings the above-captioned petition, through counsel, pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

Petitioner seeks habeas relief from his conviction on two counts of child molestation in the Superior Court of Columbia County, Georgia as the result of a jury trial held December 12 to 15, 2011, before the Honorable James G. Blanchard, Jr. Assistant District Attorney D. Parks White represented the State at trial and retained attorney J. Pete Theodocion represented Petitioner. (Doc. no. 10-5, p. 103.) This factual background

---

[1]The Court **DIRECTS** the **CLERK** to update the docket consistent with the above caption because the proper Respondent is Trevonza Bobbitt, the current Warden at Georgia State Prison. See Rule 2(a) of the Rules Governing § 2254 Cases.

describes Petitioner's trial, motion for new trial, direct appeal, extraordinary motion for new trial, first state habeas petition, second state habeas petition, and the federal habeas petition *sub judice*.

**A.    Trial**

Petitioner and his wife Renee adopted three sisters from Guatemala named Marline, Silda, and Sindy.  Marline is the oldest, Silda is the middle child, and Sindy is the youngest. Silda was thirteen years old at the time of her adoption.  (Doc. no. 10-2, p. 2.)  The jury found Petitioner guilty of molesting Silda when she was fifteen years old.  (Id.)  At trial, Silda testified Petitioner came into her bedroom one night, lay down next to her in bed, and touched her genitals.  (Doc. no. 10-7, pp. 28-30, 36.)  On another occasion, she testified, Petitioner walked into her bathroom wearing a towel, uncovered his penis, and told her he wanted to have sex with her.  (Id. at 32-33.)  A child abuse investigator, Judy Sanders, testified Silda told her about these events and her disclosure was "consistent with that of a person who has suffered sexual abuse."  (Doc. no. 10-6, pp. 35-39.)  A forensic interviewer, Kimberly Lee-Branch, testified Silda told her about these events and opined Silda's responses were consistent with a victim of sexual abuse.  (Doc. no. 10-7, pp. 89-100.)

Silda testified Petitioner treated Marline "[l]ike she was his girlfriend or his wife," and routinely kissed Marline on the mouth.  (Id. at 42-43.)  Sindy testified Petitioner would get in bed with Marline and kiss her on the mouth like husband and wife.  (Id. at 106-15.) Marline testified Petitioner never touched her inappropriately, attempted to have sexual relations with her, or got into bed with her at night to kiss her.  (Doc. no. 10-6, pp. 2-4; doc. no. 10-8, pp. 82-83.)  Marline admitted telling a police officer Petitioner tried to have sex

with her but testified it was a lie she told because the officer called her repeatedly.  (Doc. no. 10-6, pp. 9-10.)  Marline admitted telling other people Petitioner molested her but claimed it was a lie she told to get money.  (Doc. no. 10-8, p. 90.)  Marline also testified Silda never mentioned her accusations against Petitioner despite their close relationship.  (Id. at 84-85.)

Marline testified she denied in a conversation with District Attorney Ashley Wright that Petitioner had ever attempted to commit incest with her, which was relevant because the State had noticed such an attempt as similar transaction evidence.  (Id. at 78-79; doc. no. 10-10, pp. 62-64.)  Marline further testified District Attorney Wright did not like her response and told Marline she was lying.  (Doc. no. 10-8, p. 79.)  District Attorney Wright testified in rebuttal she only had a general conversation with Marline at the behest of a juvenile court judge considering Marline's request to meet with her sisters.  (Id. at 137-39.)  District Attorney Wright testified she explained to Marline they could not discuss Silda's accusations against Petitioner because Silda "is the victim of child molestation, we don't talk about charges pertaining to other people with third parties."  (Id. at 136.)  When Marline stated nothing inappropriate occurred between her and Petitioner, District Attorney Wright testified she told Marline she would not discuss the matter.  (Id.)

Petitioner testified he never touched Silda inappropriately or intentionally took off his towel in front of any of his children.  (Id. at 31-33.)  Petitioner testified his wife often argued with Marline and Silda, and he had a better relationship with his daughters than did his wife.  (Id. at 26-27.)  Petitioner further testified Silda's reputation for character and trustworthiness "was a poor one, a bad one."  (Id. at 37.)

Twin sisters testified concerning inappropriate sexual conduct by Petitioner during a sleepover in June 1984, when Petitioner was fourteen years old and the sisters were twelve years old.  (Doc. no. 10-7, pp. 122-47.)  Mrs. Auburn Kennell testified Petitioner awakened her during the night and forcibly placed her hands down his pants.  (Id. at 125-27.)  Mrs. Amber Shuman testified Petitioner awakened her the same night and fondled her, forcibly placed her hands on his genitals, and ejaculated on her.  (Id. at 139-42.)  Petitioner explained the activity as a consensual game of "show and tell" between an inexperienced fourteen-year-old boy and two promiscuous twelve and half-year-old girls.  (Id. at 34.)

Petitioner's friend, Sarah Scott, testified she sent Marline money when she ran away from Petitioner's home to Mexico, and Marline lived with Ms. Scott at the time of trial. (Doc. no. 10-8, pp. 11-15.)  Ms. Scott testified that, when she met with Mrs. Dean, Silda, and Sindy after Marline ran away, Silda and Sindy said the molestation allegations against Petitioner were false.  (Id. at 57-59.)  When Petitioner arrived for the meeting, both girls greeted Petitioner with open arms, and Silda was the first to hug Petitioner.  (Id. at 57-58.) Silda denied telling Ms. Scott and Mrs. Dean that Petitioner had done nothing to her, and she did not recall giving Petitioner a hug or saying she loved him and wanted him to come home. (Id. at 16-17.)  Sindy acknowledged she and Silda told Ms. Scott and Mrs. Dean nothing happened, and Petitioner had done nothing wrong, but Sindy said she only made the statements in an effort not to hurt the feelings of Mrs. Dean, who wanted Petitioner to come home.  (Id. at 18-19.)

The jury found Petitioner guilty on both charges of molesting Silda.  On January 27, 2012,  the  trial  court  sentenced  Petitioner  to  two  consecutive  twenty-year  terms  of

imprisonment, with Petitioner being eligible for parole during the second term.  (Doc. no. 10-10, p. 125.)

### B.  Motion for New Trial

Mr. Theodocion filed Petitioner's motion for new trial on February 24, 2012, and at the hearing held on June 15, 2012, Mr. Theodocion argued the trial court erred in:  (1) admitting similar transaction evidence concerning Petitioner's conduct with the twin sisters in 1984 because of the distance in time; (2) admitting similar transaction evidence concerning Petitioner's physical relationship with Marline; and (3) refusing to admit Marline's testimony that, when she was eight or nine years old, Silda falsely accused her biological father of drowning her twin brother because she wanted out of her parents' custody.  (Id. at 3-20.)  The trial court heard testimony from Marline concerning the third alleged error and denied the motion for new trial in its entirety.  (Id. at 18-26, 137-38.)

### C.  Direct Appeal and Silda's Recantation

On October 12, 2012, Mr. Theodocion filed a direct appeal raising the same three grounds of error.  (Id. at 141, 146.)  On February 6, 2013, while Petitioner's direct appeal was pending, Silda mailed a letter to Mr. Theodocion stating Petitioner was innocent and she lied at trial.  (Doc. no. 10-11, pp. 17-18, 69-72.)  On March 19, 2013, by way of sworn affidavit, Silda stated,

> I was named in an indictment in Columbia County Superior Court as the victim of child molestation by Scott Dean.  In December of 2011, I testified in Columbia County Superior Court against Scott Dean.  The testimony I gave the Court was not true.  Scott Dean did not touch my private parts and he did not expose himself to me.

(<u>Id.</u> at 73.)  On May 7, 2013, the Georgia Court of Appeals affirmed Petitioner's conviction on both counts.  <u>Dean v. State</u>, 742 S.E.2d 758, 759-62 (Ga. Ct. App. 2013).

### D.    First State Habeas Petition and Extraordinary Motion for New Trial

On June 21, 2013, Mr. Theodocion filed a state habeas petition in the Superior Court of Tattnall County, citing Silda's recantation and arguing Petitioner's conviction was based "on wholly perjured testimony" in violation of Petitioner's due process rights under the Constitution of the State of Georgia and the United States Constitution.  (Doc. no. 10-1, pp. 1-5.)  On September 18, 2013, while the state habeas petition was pending, Mr. Theodocion filed an extraordinary motion for new trial, citing the recantation as new evidence and advancing the same due process arguments.  (<u>Id.</u> at 76-80.)

The trial court conducted a hearing on Petitioner's extraordinary motion for new trial on October 4, 2013.  (Doc. no. 10-11, p. 8.)  Silda recanted her trial testimony and explained she falsely accused Petitioner because she wanted to leave his home to get away from Mrs. Dean.  (<u>Id.</u> at 13-16.)  Silda testified she had not been threatened or promised anything for the recantation letter.  (<u>Id.</u> at 17-20.)  Silda admitted she was angry with Ms. Laticia Pough, her foster mother, when she wrote the letter because Ms. Pough forbade Silda from dating her boyfriend.  (<u>Id.</u> at 26-27.)  Once Silda wrote the letter, she moved out of the foster home to live with Mrs. Dean's sister, Leann, who allowed Silda to date her boyfriend.  (<u>Id.</u> at 20-21, 27.)  Ms. Pough confirmed she forbade Silda from dating her boyfriend, and Silda wanted to leave the foster home when she wrote the recantation letter.  (<u>Id.</u> at 30-35.)  Ms. Brenda Neal, a Department of Family and Child Services worker, testified Silda told her

after the trial she had lied about Petitioner, and Ms. Neal facilitated Silda's contact with Mrs. Dean when Silda said she wanted to leave her foster home in February 2013.  (Id. at 35-41.)

On October 31, 2013, the trial court denied Petitioner's extraordinary motion for new trial.  (Id. at 83-87.)  The court's order identified the six-part test for granting a new trial based on newly discovered evidence and explained (1) a new trial should not be granted if the new evidence merely impeaches the credibility of a witness; and (2) recantation merely impeaches the recanting witness's trial testimony.  (Id. at 84-85 (citing Timberlake v. State, 271 S.E.2d 792, 795-96 (Ga. 1980) and Morrison v. State, 567 S.E.2d 360 (Ga. Ct. App. 2002).)  Absent evidence of the "purest fabrication," the trial court explained, the only basis for setting aside Petitioner's conviction was O.C.G.A. § 17-1-4, which requires as a condition precedent a perjury conviction of the recanting witness.  (Id. at 85.)  Because Silda had not been convicted of perjury, Petitioner was not entitled to a new trial under § 17-1-4. (Id. at 85-86.)  Petitioner did not appeal the denial of his extraordinary motion for new trial.

On December 18, 2013, the Superior Court of Tattnall County conducted an evidentiary hearing concerning Petitioner's state habeas petition.  (Doc. no. 10-5, p. 1.)  In his opening, Mr. Theodocion explained Silda's recantation did not create a right to new trial because it only affected her credibility as a witness, and he moved for a new trial despite this fact because he wanted to supplement the evidentiary record.  (Id. at 11.)  In the absence of a valid basis to appeal the trial court's denial of the extraordinary motion, Petitioner asked the habeas court for redress "under the due process clauses in the state and federal constitutions that basically [Petitioner] is being convicted and currently incarcerated based wholly upon admittedly false evidence, false testimony."  (Id. at 12.)

7

The State argued the trial court's order denying the extraordinary motion was *res judicata*, and habeas corpus is not the proper forum to consider new evidence.  (Id. at 16-17.) Mr. Theodocion countered that, because the trial court did not have discretion to grant a new trial based on recanted testimony, the habeas court should correct the due process violation since "the entire trial" rested on false information.  (Id. at 19.)  Silda testified, admitting she falsified the allegations because she did not get along with Mrs. Dean and wanted out of the Dean home after Marline ran away.  (Id. at 24-25.)  Silda testified no one in the District Attorney's Office or the Columbia County Sheriff's Office told her to lie.  (Id. at 26-27.)

By order entered on November 10, 2014, the state habeas court denied relief, concluding neither Petitioner's claim of innocence based on Silda's recanted testimony, nor his due process claim, formed a proper basis for habeas corpus relief.  (Doc. no. 10-2.)  On December 2, 2014, Petitioner replaced Mr. Theodocion with new counsel, moved to vacate the final state habeas order, and requested leave to amend the state habeas petition to raise trial and appellate claims of ineffective assistance against Mr. Theodocion.  (Doc. no. 10-3, pp. 19-21.)   Petitioner contended Mr. Theodocion deprived him of the right to bring ineffective assistance of trial and appellate counsel claims by never explaining his continued representation precluded assertion of such claims.   (Id.)  The only potential claim identified was Mr. Theodocion's alleged ineffectiveness in not objecting to the District Attorney's trial testimony.  (Id. at 20.)  The state habeas court denied the motions to vacate and amend on December 4, 2014.  (Doc. no. 1, p. 11.)

On December 10, 2014, Petitioner filed his application for a certificate of probable cause seeking authorization to appeal the state habeas court's final order.  (Doc. no. 10-3, pp.

1-7.)   Although acknowledging there is no right to representation in a state habeas proceeding, Petitioner argued the state habeas court erred in permitting Mr. Theodocion to represent Petitioner, thereby denying Petitioner the opportunity to raise ineffective assistance of counsel claims.  (Id. at 2-7.)   On May 11, 2015, the Supreme Court of Georgia denied Petitioner's application.  (Doc. no. 10-4.)

### E.   Federal Habeas Petition and Second State Habeas Petition

The federal petition, filed on March 22, 2016 by attorneys Mary Helen Moses and Stephen M. Reba, raises the following grounds for relief.

(1)   Petitioner is actually innocent of child molestation.

    (a)   Petitioner's actual innocence overcomes any procedural deficiencies in a claim otherwise procedurally defaulted in these federal proceedings.  (Doc. no. 1, pp. 3, 11-13; doc. no. 5, pp. 10-13; doc. no. 23, p. 4.)

    (b)   Petitioner is entitled to federal habeas corpus relief based on a freestanding claim of actual innocence.  (Doc. no. 1, p. 12 n.2; doc. no. 5, pp. 10-13; doc. no. 23, p. 4.)

(2)   Petitioner's due process rights have been violated because:

    (a)   his conviction on both counts is based on perjured testimony, (doc. no. 1, pp. 3, 14; doc. no 5, pp. 14-15; doc. no. 23, pp. 4-5);

    (b)   the trial court denied Petitioner a new trial because Silda Dean has not been convicted of perjury, thereby placing all authority in the prosecutor who makes charging decisions and divesting the judge of all authority to grant any form of relief (doc. no. 1, pp. 3, 13 n.3, 14; doc. no. 5, pp. 14-15; doc. no. 23, pp. 4-5); and,

    (c)   the District Attorney refuses to prosecute Silda Dean for perjury even though she has recanted her trial testimony, (doc. no. 1, pp. 3, 15; doc. no. 5, pp. 14-15; doc. no. 23, pp. 4-5).

(3)   Mr. Theodocion provided ineffective assistance

    (a)   with respect to use of perjured testimony by:

>   (i)    failing to raise a due process claim in the extraordinary
>          motion for new trial, (doc. no. 1, p. 16; doc. no. 5, p. 15;
>          doc. no. 23, pp. 5-6);
>
>   (ii)   failing to appeal the denial of the extraordinary motion
>          for new trial to the Georgia Court of Appeals, (doc. no.
>          1, p. 16; doc. no. 5, p. 15; doc. no. 23, pp. 5-6); and,
>
>   (iii)  failing to raise a due process claim in the state habeas
>          petition, (doc. no. 1, p. 16; doc. no. 5, p. 15; doc. no. 23,
>          pp. 5-6);
>
> (b)   by failing to inform Petitioner his continued representation
>       beyond trial and through the state habeas proceedings would
>       preclude Petitioner from later raising a claim of ineffective
>       assistance of counsel, (doc. no. 1, p. 16; doc. no. 5, pp. 15-16;
>       doc. no. 23, pp. 5-6); and,
>
> (c)   by failing to object to the trial testimony of District Attorney
>       Ashley Wright that Silda Dean was "a victim of child
>       molestation."  (Doc. no. 1, p. 17; doc. no. 5, p. 16; doc. no. 23,
>       p. 6.)

Respondent moved to dismiss the "mixed petition" because the ineffective assistance

claims in Count Three were unexhausted.  (Doc. no. 9.)  Chief United States District Judge J.

Randal Hall adopted the undersigned's recommendation to deny the motion to dismiss and

stay the federal case while Petitioner returned to state court with his ineffective assistance

claims.  (Doc. nos. 12, 14.)  On January 10, 2017, Petitioner filed a second application for

state habeas relief in the Superior Court of Tattnall County.  (Doc. no. 21-1, p. 1.)  On

February 21, 2017, the state habeas court dismissed the successive petition with prejudice.

The habeas court concluded:

>   Under O.C.G.A. § 9-14-51, all grounds for relief should be dismissed
> as successive if they were, or could reasonably have been raised before.  The
> ruling of the previous habeas court is binding as there has been no change in
> the facts or law since then.  The Court finds Petitioner's second habeas corpus
> petition is successive and should be dismissed as such.

(Doc. no. 21-2.)  Over the dissent of Justices David Nahmias, Keith R. Blackwell, and Nels

S.D. Peterson, the Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on May 21, 2018.  (Doc. no. 21-4.)

On October 9, 2018, Petitioner moved to reopen this case, and the Court directed the parties to provide supplemental briefing.  (Doc. nos. 17, 18.)  Respondent filed an amended answer, (doc. no. 20), and Petitioner filed a supplemental reply clarifying he is not raising a "cumulative error" argument.  (See doc. no. 23.)

## II.   A HEARING IS UNWARRANTED BECAUSE PETITIONER FAILED TO SPECIFY NEW EVIDENCE MISSING FROM THE RECORD

Petitioner seeks an evidentiary hearing concerning (1) "the recantation itself and [Silda's] credibility"; (2) whether "the District Attorney knew at the time of [Silda's] testimony that it was false"; and (3) the ineffective assistance claims in Ground Three.  (Doc. no. 1, p. 17; doc. no. 5, pp. 15-16; doc. no. 19, p. 2; doc. no. 23, pp. 3-6.)  Petitioner is not entitled to a hearing because it is improper to resubmit evidence that is merely redundant of the state court record, Petitioner failed to specify new evidence missing from the record, and he does not describe any prior due diligence to discover evidence regarding the District Attorney's knowledge about the truthfulness of Silda's testimony at trial.

### A.   Analytical Framework for Considering Hearing Request

When determining whether an evidentiary hearing is warranted, the Court must consider the restrictions of § 2254(e)(2), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"):

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that - -

    (A)     the claim relies on - -

              (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

              (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B)     the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  Because this code section applies only when an "applicant has failed to develop the factual basis of a claim," an evidentiary hearing is prohibited where a petitioner fully developed the factual basis of his claim in state court.

A petitioner who has "failed to develop the basis for a claim" must establish "a factual predicate that could not have been previously discovered through the exercise of diligence." § 2254(e)(2)(A)(ii).  Diligence is a reasonable attempt, in light of the information then available, to investigate and pursue claims in state court.  Williams v. Taylor, 529 U.S. 420, 436 (2000).  A petitioner is not diligent when he has failed to present evidence despite notice, access to the evidence, and sufficient time to prepare.  Pope v. Sec'y Dep't of Corr., 680 F.3d 1271, 1289 (11th Cir. 2012).  Petitioner must also "persuade the [Court] that the proffered evidence would affect the resolution of the claim."  Breedlove v. Moore, 74 F. Supp. 2d 1226, 1233 (S.D. Fla. 1999) (citing Bolender v. Singletary, 16 F.3d 1547, 1555 n.9 (11th Cir. 1994)); see also Stephens v. Kemp, 846 F.2d 642, 650-51 (11th Cir. 1988) (same).  "[I]f a habeas petition does not allege enough specific facts that, if they were true, would

12

warrant relief, the petitioner is not entitled to an evidentiary hearing."   Chavez v. Sec'y Fla.

Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011).

The Court must also consider § 2254(d), as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"'[R]eview under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits' . . . and therefore 'evidence introduced in federal court

has no bearing on § 2254(d)(1) review.'"   Landers v. Warden, 776 F.3d 1288, 1295 (11th

Cir. 2015) (quoting Cullen v. Pinholster, 563 U.S. 170, 181, 185 (2011)) (internal citations

omitted).   The restriction "applies even more clearly to § 2254(d)(2), which contains an

explicit textual restriction to evaluate the state court ruling only 'in light of the evidence

presented in the State court proceeding.'"   Id. (quoting § 2254(d)(2)).

Furthermore, "although § 2254(e)(2) permits federal habeas courts to take new

evidence in an evidentiary hearing, that provision applies only when the petitioner has either

satisfied § 2254(d), or the federal court is deciding claims that were not adjudicated on the

merits in state court."   Locke v. Sec'y, Fla. Dep't of Corr., No. 5:15cv55/RV/EMT, 2016 WL

3647795,  at *32 (N.D. Fla. May 12, 2016) (citing Cullen, 563 U.S. at 185-86), *adopted by*,

2016 WL 3647875 (N.D. Fla. June 30, 2016); <u>see also</u> <u>Pope v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 1254, 1263 (11th Cir. 2014) ("§ 2254(d) must be satisfied before a federal habeas court may consider any § 2254(e)(2) evidence.") (citing <u>Cullen</u>, 563 U.S. at 181-82).

### B.     Petitioner Is Not Entitled to an Evidentiary Hearing

Petitioner is not entitled to an evidentiary hearing with respect to Silda's recantation and credibility because the state record is replete with such evidence and Petitioner does not identify any evidence missing from the record.  Instead, he asks the Court to hear the evidence firsthand and make its own credibility determination.  Petitioner is not entitled to a hearing in a bid to convince a federal court it should reach a different result than the state factfinder, which under AEDPA is entitled to significant deference.  28 U.S.C. §§ 2254(d), (e).  "Federal courts are not forums in which to relitigate state trials." <u>Herrera v. Collins</u>, 506 U.S. 390, 401 (1993) (citation omitted).

With respect to the District Attorney, Petitioner does not allege she or her prosecutorial team knew of the falsehood at trial or point to evidence suggesting as much.  Nor does he allege the factual predicate could not have been discovered previously with due diligence.  As to the ineffective assistance claims, the scope, nature, and outcome of Mr. Theodocion's representation are abundantly clear from the record.  Petitioner has had ample opportunity to brief ineffective assistance, both in this Court and state court, and Petitioner does not identify a factual predicate missing from the record.  Instead, he merely requests a hearing because he has "yet to have a hearing on ineffective assistance of counsel . . . ." (Doc. no. 1, p. 17.)  Accordingly, the request for an evidentiary hearing should be **DENIED**.

**III.  PETITIONER'S GROUND ONE ACTUAL INNOCENCE CLAIMS FAIL BECAUSE FREESTANDING CLAIMS DO NOT EXIST AND THE GATEWAY TO REVIVE DEFAULTED CLAIMS IS IRRELEVANT**

In Ground One (a), Petitioner asserts his purported actual innocence overcomes any default of the claims asserted in Grounds Two and Three.  The actual innocence gateway standard is demanding, and "in virtually every case, the allegation of actual innocence has been summarily rejected."  Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citations omitted). "[T]enable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (citations omitted). Assuming *arguendo* Petitioner's case is the extraordinary one, the actual innocence gateway does not advance his claims because the Court does not reject any of his Ground Two and Three claims as procedurally defaulted.  Instead, as explained *infra*, the Court finds (1) the Ground Two claims are not cognizable and are barred by the Teague doctrine; (2) the Ground Three (a) and (b) claims are not cognizable because they allege ineffective assistance in post-conviction proceedings; and (3) the Ground Three (c) claim fails on the merits.

With respect to Ground One (b), Petitioner acknowledges he "may not be permitted to prevail on a freestanding claim of actual innocence," but suggests the law may be unsettled and asserts the claim "to the extent the law allows."  (Doc. no. 1, p. 11, 12 n.2.)  The Eleventh Circuit recently reiterated there is no freestanding claim of actual innocence because "'[f]ederal courts are not forums in which to relitigate state trials.'"  Raulerson v. Warden, 928 F.3d 987, 1004 (11th Cir. 2019) (quoting Herrera v. Collins, 506 U.S. 390, 401

(1993)).  "It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since trial."  Id. (citing Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002)).  "[A]bsent an independent constitutional violation occurring in the underlying state criminal proceeding," Eleventh Circuit precedent forecloses habeas relief based on a claim of actual innocence.  Id. (citations omitted).  Ground One (b) thus forms no basis for federal habeas corpus relief.

## IV.   THE  GROUND  TWO  CLAIMS  ARE  NOT  COGNIZABLE  AND  ARE BARRED BY THE TEAGUE DOCTRINE

Petitioner alleges in Ground Two his conviction on both charges violates the Due Process Clause because (1) it is based on Silda's perjured testimony; (2) the trial court abdicated its judicial role by denying a new trial based solely on the District Attorney's election not to prosecute Silda for perjury; and (3) the District Attorney wrongfully refused to prosecute Silda despite the recantation.  The Ground Two claims fail because they allege post-conviction due process violations that are not cognizable and are barred by the Teague doctrine.

### A.   Petitioner's Ground Two Claims Concerning Post-Conviction Denial of a New Trial Are Not Cognizable

Petitioner's Ground Two claims arise out of the trial court's denial of Petitioner's extraordinary motion for new trial.  An extraordinary motion for new trial in Georgia constitutes post-conviction or other collateral review.  Westmoreland v. Warden, 817 F.3d 751, 754 (11th Cir. 2016).  Due process violations on collateral review during state post-conviction proceedings do not form a basis for federal habeas corpus relief.  Carroll v. Sec'y,

16

Dep't of Corr., 574 F.3d 1354, 1365-66 (11th Cir. 2009); Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004).   Thus, the alleged due process violations in the extraordinary motion for new trial proceedings cannot form the basis for federal habeas corpus relief.

### B.   The Teague Doctrine Bars Petitioner's Ground Two Claims

The Ground Two claims are also barred by the Teague doctrine.   "Federal habeas corpus review 'serves to ensure that state convictions comport with federal law that was established at the time petitioner's conviction became final.'"   Tharpe v. Warden, 898 F.3d 1342, 1344 (11th Cir. 2018) (per curiam) (citations omitted).   "The Teague doctrine bars retroactive application in a [collateral] proceeding of any new constitutional rule of criminal procedure which had not been announced at the time the movant's conviction became final, with two narrow exceptions."   McCoy v. United States, 266 F.3d 1245, 1255 (11th Cir. 2001).   The two exceptions are (1) new substantive rules that place conduct beyond the reach of criminal law or remove a class of defendants from a certain type of punishment; and (2) watershed procedural rules implicating the fundamental fairness and accuracy of the proceeding such as the holding in Gideon v. Wainwright, 372 U.S. 335 (1963), that a defendant charged with a serious offense is entitled to legal representation.   See Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1331 (11th Cir. 2019); Spaziano v. Singletary, 36 F.3d 1028, 1042 (11th Cir. 1994); Tharpe, 898 F.3d at 1346.

A federal court follows a three-step process to apply Teague.   Lambrix v. Singletary, 520 U.S. 518, 527 (1997).   First, the court determines the date on which the conviction became final.   Id.   Second, the court "must [s]urve[y] the legal landscape as it then existed and determine whether a state court considering [the defendant's] claim at the time his

conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." Id. (quotations and citations omitted).  The Teague doctrine bars application of the legal rule forming the basis of the claim if that rule breaks new ground, imposes a new obligation on the States or Federal Government, or extends existing precedent by applying it in a novel setting.  Chaidez v. United States, 568 U.S. 342, 347 (2013); Whorton v. Bockting, 549 U.S. 406, 416 (2007); Graham v. Collins, 506 U.S. 461, 467 (1993); Stringer v. Black, 503 U.S. 222, 228 (1992); Butler v. McKellar, 494 U.S. 407, 414-415 (1990).  Third, if the Teague bar applies after the first two steps, the court must determine whether the two narrow exceptions apply.  Tharpe, 898 F.3d at 1344.

This Court must perform a threshold Teague analysis before considering the merits of Petitioner's Ground Two claims.  Beard v. Banks (Banks II), 542 U.S. 406, 412 (2004); Horn v. Banks (Banks I), 536 U.S. 266, 271-72 (2002) (per curiam); Knight, 936 F.3d at 1333; see also Hamm v. United States, 269 F.3d 1247, 1250 (11th Cir. 2001) (per curiam) ("[T]he Teague bar applies without regard to the merits of the underlying claim, or that doctrine would have no function and meaning.").  "That is because the Supreme Court's jurisprudence concerning the retroactivity of new rules of constitutional law is primarily concerned not with the question of whether a constitutional violation occurred, but with the availability or nonavailability of remedies."  Knight, 936 F.3d at 1333 (internal quotation marks and citation omitted).  If a claim is Teague-barred, the Court "may not offer an advisory opinion on whether the claim could have merit."  Id. at 1334.

1.    **Petitioner Bases His Ground Two Claims on an Improper Construction of the Trial Court Order Denying the Extraordinary Motion for New Trial**

Before conducting the Teague analysis, it is necessary to dissect and dispel Petitioner's incorrect notion the trial court abdicated its duty to determine the merits of his extraordinary motion for new trial and deferred entirely to the District Attorney's decision not to prosecute Silda.  (Doc. no. 1, p. 13 n.3.)   The trial court's order, viewed properly through the AEDPA lens, correctly applies the Georgia new trial standards, and the absence of a perjury conviction was only one reason Georgia law did not afford Petitioner a new trial.

The trial court starts by explaining the longstanding disfavor in Georgia of granting a new trial based on newly discovered evidence, and the concomitant requirement a defendant satisfy six rigorous new trial requirements enunciated forty years ago in Timberlake v. State, 271 S.E.2d 792 (Ga. 1980).  The most troublesome requirement for Petitioner, as highlighted by the trial court, is that "a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness."  (Doc. no. 10-11, p. 84 (citing Cobb v. State, 133 S.E.2d 596 (Ga. 1963)); see also Davis v. State, 660 S.E.2d 354 (Ga. 2008).  As the trial court explained, recantation constitutes mere impeachment of trial testimony in Georgia that fails the Timberlake test and cannot serve as a ground for a new trial.  Davis, 660 S.E.2d at 358-59; see also Drake v. State, 287 S.E.2d 180, 182 (Ga. 1982) (holding post-trial recantation by State's witness is not ground for new trial); Morrow v. State, 136 S.E. 92, 93 (Ga. 1926) (reciting "well settled" rule State witness's recantation is not cause for new trial "though he be the only witness for the prosecution"); Johnson v. State, 513 S.E.2d 291, 293

19

(Ga. Ct. App. 1999) (holding no right to new trial despite recantation by material State witness who "gave direct evidence tending strongly to show the defendant's guilt").

The trial court correctly explained recantation can nonetheless afford a defendant a new trial when (1) the trial testimony was of the "purest fabrication," or (2) the prosecutor secures a conviction of the recanting witness for perjury as required by § 17-1-4.  (Doc. no. 10-11, p. 85 (citing Cooper v. State, 700 S.E.2d 593, 595 (Ga. 2010) and Coggins v. State, 750 S.E.2d 331, 334 (Ga. 2013).)   After stating these two exceptions, the trial court concluded as follows:  "At core, the recanting witness has not been convicted of perjury; therefore Mr. Dean has not shown that his guilty verdict should have been set aside pursuant to O.C.G.A. § 17-1-4[]."  (Id.)

Petitioner apparently assumes the trial court never considered the "purest fabrication" exception and, instead, denied the motion solely on the basis of § 17-1-4 and the District Attorney's decision not to prosecute Silda for perjury.  Such a construction is incompatible with the trial court's order and AEDPA deference, which requires this Court to presume state courts know and follow the law, as well as to give state court decisions the benefit of the doubt.  See Woodford v. Viscotti, 537 U.S. 19, 24 (2002); see also Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349-51 (11th Cir. 2019) (explaining federal habeas courts are not to flyspeck or grade state court orders and recognizing state court orders not required to "'show[] its work' by explicitly mentioning 'all relevant circumstances'"); Rimmer v. Sec'y, Fla. Dep't of Corr., 876 F.3d 1039, 1055 (11th Cir. 2017) (same); Lee v. Comm'r, Ala. Dep't of Corr., 726 F.3d 1172, 1211 (11th Cir. 2013) (same).

Moreover, although Petitioner faults the trial court for focusing on the perjury exception, the "purest fabrication" exception requires proof the recanting witness's trial testimony is "an impossibility," such as when the witness could not have observed the events to which he testified because he was incarcerated at the time. Lewis v. State, 804 S.E.2d 82, 86 (Ga. 2017). When the post-trial evidence shows the testimony to be an impossibility, "it cannot be said that the new evidence establishing the witness's perjury is merely impeaching." Id. (internal quotation marks and citations omitted.) Silda's recantation obviously does not satisfy this exception. Petitioner has never argued it does, either in his trial court briefs supporting the extraordinary motion for new trial or his current habeas petition. The trial court thus properly focused its analysis on § 17-1-4 as the only avenue of relief potentially available to Petitioner. With this proper construction in mind, the Court applies the Teague analysis.

### 2.     Precedent Did Not Compel the Conclusion Petitioner's Due Process Rights Were Violated

Petitioner points to no precedent existing at the time of his conviction, or even today, holding a defendant's due process rights are violated when a material witness recants after trial, the prosecutor declines to pursue a perjury conviction, and the trial court denies a motion for new trial based in part on state law requiring a perjury conviction. The Court has not found any such precedent either.

Petitioner contends it was well established at the time of his trial a defendant's due process rights are violated by (1) a prosecutor's knowing use of perjured testimony to sustain a conviction, citing Guerrero v. Beto, 384 F.2d 886 (5th Cir. 1967); and (2) gross

prosecutorial misconduct in the form of willful refusal to prosecute a clear crime, citing

Davis v. Zant, 36 F.3d 1538 (11th Cir. 1994). (Doc. no. 5, p. 15.) The latter contention is a

mischaracterization of Davis, which found a state murder trial unconstitutional because the

prosecutor, not a witness, made material misrepresentations to conceal the fact someone else

confessed to the murder. Petitioner has not cited, and the Court cannot locate, any precedent

finding the violation of a defendant's due process rights occurs when a prosecutor elects not

to pursue a perjury charge against a recanting witness.

The former contention is correct but does nothing to advance Petitioner's claims.

Long before Petitioner's conviction, the Supreme Court held a prosecutor commits a due

process violation by soliciting testimony he knows at the time to be false or by allowing

unsolicited false testimony to remain uncorrected at trial when it appears. See Guzman v.

Sec'y, Dep't of Corr., 663 F.3d 1336, 1347 (11th Cir. 2011) (citing 1935 Supreme Court case

for rule "deliberate deception of a court and jurors by the presentation of known false

evidence is incompatible with rudimentary demands of justice."); see also Napue v. Illinois,

360 U.S. 264, 269 (1959) (holding due process violation occurs "when the State, although

not soliciting false evidence, allows it to go uncorrected when it appears").

The problem for Petitioner, however, is the absence of any evidence prosecutors knew

Silda's accusations were false at the time of trial. At both the trial court hearing regarding

the extraordinary motion for new trial and the state habeas hearing, Silda was clear she alone

decided to accuse Petitioner falsely because she wanted to leave Petitioner's home, and no

one in the District Attorney's Office told her to lie. (Doc. no. 10-5, pp. 26, 43, 76.) As

summarized by Mr. Theodocion at the hearing before the trial court: "Silda lied . . . the

22

entire allegation, the entire case against Mr. Dean was a fraud.  It was a fraud performed, a fraud against the District Attorney's Office, a fraud performed in front of Your Honor, in front of that jury, in front of the whole world." (Id. at 76.)   There is no evidence to support a finding the prosecutor was complicit at trial in Silda's alleged perjury.   To the extent Petitioner advances a new rule requiring prosecutors to pursue a conviction for perjury against recanting witnesses, the Teague doctrine bars application because the rule breaks new ground, imposes a new obligation, and extends existing precedent by applying it in a novel setting.

Petitioner argues O.C.G.A. § 17-1-4 violates his due process rights by requiring a perjury conviction against Silda.  This code section provides, in pertinent part, that a verdict and judgment "obtained . . . in consequence of corrupt and willful perjury" shall not be vacated "unless the person charged with perjury shall have been duly convicted thereof and unless it appears to the court that the verdict [and] judgment . . . could not have been obtained and entered without the evidence of the perjured person . . . ."  There is no United States Supreme Court case holding § 17-1-4, or any similar statutory scheme, violates federal due process.  Petitioner never contends otherwise.  "AEDPA precludes a federal court from imposing its will, invalidating [a] state statute as unconstitutional, and granting federal habeas relief in the absence of 'clearly established' federal law, which the United States Supreme Court admonishes is *a holding of that Court*."  Hill v. Humphrey, 662 F.3d 1335, 1360 (11th Cir. 2011) (*en banc*) (emphasis in original).

Not only is there no precedent suggesting § 17-1-4 is unconstitutional, but the Georgia Supreme Court has twice held, before and after Petitioner's conviction became final,

23

this code section does not violate the Due Process or Equal Protection clauses of the United States Constitution.   In Lewis, the appellant argued § 17-1-4 violates due process by requiring a perjury conviction because "permitting the trial court to exercise its discretion to grant a new trial based on recanted testimony is required to guarantee the fundamental fairness of the criminal proceedings against him."  804 S.E.2d at 87.  The Georgia Supreme Court rejected this argument, explaining as follows:

> This statutory requirement of a perjury conviction has been challenged before. Years ago, this Court rejected the same constitutional challenges that are now asserted by this appellant.   See Burke v. State, 205 Ga. 656, 659–660, 54 S.E.2d 350 (1949).   In Burke, we held that OCGA § 17–1–4 (formerly codified at Code 1933 § 110–706) was actually in harmony with United States Supreme Court decisions holding that the due process guaranteed by the Fourteenth Amendment is denied when a conviction is procured by perjured testimony.  Id. at 659, 54 S.E.2d 350.  The statute requires a verdict obtained by perjured testimony to be set aside.  This Court noted, however, that when the only evidence of perjury is that a trial witness later gives testimony contrary to that given at trial, the trial court "ought not to be called upon to say whether or not one of such statements is enough reliable evidence to authorize disbelief of the other."  Id. at 660, 54 S.E.2d 350.  Instead, the statutory requirement for a perjury conviction to be obtained before a guilty verdict may be vacated "relieves the court of the burden of choosing between contradictory statements and requires evidence which is convincing and which comes from the purest source, to wit, a conviction for perjury."  Id.  We further held that this Code section applies to all persons, and therefore does not deny equal protection of the law to anyone.  Id. See also Chatterton v. State, 221 Ga. 424, 429 (1), 144 S.E.2d 726 (1965).   Again, we reject the assertion that the provisions of OCGA § 17–1–4 violate a convicted criminal's rights to due process and equal protection of the law.

Id. at 88.  Petitioner failed to mention Lewis and Burke.

Petitioner also appears to attack the entire framework in Georgia for determining the effect of post-conviction recantations, inferring it is a due process violation to characterize recantations as mere impeachment of trial testimony and permit a new trial only if (1) the

24

trial testimony was of the purest fabrication; or (2) the prosecutor secures a conviction of the recanting witness for perjury as required by § 17-1-4.  Petitioner points to no United States Supreme Court precedent supporting such a determination, and the Court has not found any. On the contrary, the law was clearly established nearly eighty years ago, in <u>Hysler v. Florida</u>, 315 U.S. 411, 413 (1942), a habeas petitioner cannot "contend that mere recantation of testimony is in itself ground[s] for invoking the Due Process Clause against a conviction." As the Eleventh Circuit more recently observed:

> "recantations are viewed with extreme suspicion by the courts."  <u>United States v. Santiago</u>, 837 F.2d 1545, 1550 (11th Cir. 1988); <u>United States v. Smith</u>, 433 F.2d 149, 150–51 (5th Cir. 1970) (quoting <u>Newman v. United States</u>, 238 F.2d 861, 862 n.1 (5th Cir. 1956)).  This makes sense, because as Justice Brennan once explained, recantation testimony "upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction."  <u>Dobbert v. Wainwright</u>, 468 U.S. 1231, 1233–34, 105 S.Ct. 34, 36, 82 L.Ed.2d 925 (1984) (Brennan, J., dissenting).

<u>In re Davis</u>, 565 F.3d 810, 825 (11th Cir. 2009) (*per curiam*).  Collecting cases nationwide decided before and after Petitioner's conviction became final, the Southern District of Alabama recently remarked "recanting testimony is easy to find but difficult to confirm or refute:  witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial."  <u>Taite v. Stewart</u>, No. CV 13-00322-CG-N, 2016 WL 4154257, at *11–12 (S.D. Ala. June 28, 2016) (citation omitted), *adopted by*, No. CV 13-00322-CG-N, 2016 WL 4148363 (S.D. Ala. Aug. 4, 2016).

Also relevant to the analysis is <u>District Atty's Office for Third Judicial Dist. v. Osborne</u>, 557 U.S. 52 (2009), wherein the petitioner argued the Due Process Clause required

his post-conviction access to the State's evidence because of a liberty interest in proving his innocence "even after a fair trial has proved otherwise." Id. at 67. The Supreme Court concluded the Due Process Clause does not require "certain familiar preconviction trial rights be extended to protect Osborne's postconviction liberty interest." Id. at 68.

> A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man. At trial, the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt. But "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." Herrera v. Collins, 506 U.S. 390, 399, 113 S. Ct. 853, 122 L.Ed.2d 203 (1993). "Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." [Connecticut Bd. Of Pardons v.] Dumschat, [452 U.S. 458,] 464, 101 S. Ct. 2460 [1981] (internal quotation marks and alterations omitted).

Id. at 68-69.

Thus, a post-conviction petitioner does not have a due process interest parallel to a trial right, and any process due must be viewed in light of the fact that a determination of guilt at a fair trial has already been made. Id. at 69. The State has flexibility to decide on "what procedures are needed in the context of postconviction relief," and those State procedures are evaluated for whether they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," or "transgresses any recognized principle of fundamental fairness in operation." Id. "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." Id. The Court need not determine whether Georgia's post-conviction treatment of recantations is fundamentally inadequate to vindicate

26

Petitioner's substantive rights.  It is enough under <u>Teague</u> that Petitioner points to no United States Supreme Court precedent so holding, and the Court cannot find any such precedent.

In sum, having surveyed the legal landscape, the Court finds no court would have felt compelled by existing precedent to conclude Petitioner's due process rights were violated in the manner he alleges.  Nor would such a determination have been apparent to all reasonable jurists.

### 3.    The <u>Teague</u> Exceptions Do Not Apply

Neither <u>Teague</u> exception applies.  Petitioner has not proposed substantive rules that place conduct beyond the reach of criminal law or remove a class of defendants from a certain type of punishment.  <u>See</u> <u>Spaziano</u>, 36 F.3d at 1042.  Nor has Petitioner espoused a "watershed rule of criminal procedure." <u>Gray v. Netherland</u>, 518 U.S. 152, 170 (1996).  The <u>Teague</u> doctrine thus bars the Ground Two claims, and they form no basis for relief.

## V.    THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS IN GROUND THREE FORM NO BASIS FOR RELIEF

### A.    Grounds Three (a) and (b) Fail Because They Allege Ineffective Assistance in Post-Conviction Proceedings

In Ground Three (a), Petitioner argues Mr. Theodocion was ineffective because he failed to raise a due process argument in the extraordinary motion for new trial, failed to appeal denial of that motion, and failed to raise a due process argument in the state habeas petition.  (<u>See</u> doc. no. 1, p. 16; doc. no. 5, p. 15; doc. no. 23, pp. 5-6.)  In Ground Three (b), Petitioner claims Mr. Theodocion was ineffective because he failed to disclose his continued representation beyond trial and in the state habeas proceedings would preclude Petitioner from raising ineffective assistance claims.  (<u>See</u> doc. no. 1, p. 16; doc. no. 5, pp. 15-16; doc.

no. 23, pp. 5-6.)   All of these claims are prohibited by the plain language of 28 U.S.C. § 2254(i), which provides as follows:   "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."   "[M]ost naturally read, § 2254(i) prohibits a court from granting substantive habeas relief on the basis of a lawyer's ineffectiveness in post-conviction proceedings . . . ."   Martel v. Clair, 565 U.S. 648, 662 & n.3 (2012) (citation omitted).   Petitioner has no response to Respondent's invocation of § 2254(i) as a bar to federal relief on these claims.  (See doc. no. 23, pp. 5-6.)

Grounds Three (a) and (b) arise from Mr. Theodocion's performance in post-conviction proceedings outside of a direct appeal where there is no Sixth Amendment right to counsel.  See Murray v. Giarratano, 492 U.S. 1, 10-12 (1989) (explaining there is no requirement to appoint counsel for collateral proceedings); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (holding defendant has no constitutional right to counsel when pursuing discretionary appeal after conviction is final upon exhaustion of appellate process); Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1344 (11th Cir. 2007) (same).   Where there is no constitutional right to counsel, there can be no ineffective assistance.  Wainwright v. Torna, 455 U.S. 586, 587 (1982) (per curiam); Golston v. Att'y Gen. of Ala., 947 F.2d 908, 911 & n.3 (11th Cir. 1991); Moore v. Zant, 885 F.2d 1497, 1507 (11th Cir. 1989).

Petitioner specifically ties his claim in Ground Three (b) to Mr. Theodocion's participation in the state habeas proceedings.  (Doc. no. 1, p. 16; doc. no. 5, pp. 15-16 (citing Castell v. Kemp, 331 S.E.2d 528 (Ga. 1985), for ethical dilemma created by trial counsel's representation in habeas proceedings); see also doc. no. 23, pp. 5-6 (discussing Mr.

28

Theodocion's representation in state habeas proceedings).)   The claim cannot be read to allege ineffective assistance by Mr. Theodocion on direct appeal.   Indeed, under Georgia law, procedural default of an ineffective assistance claim may be excused at the state habeas level if the state habeas proceeding is the first change of counsel for the petitioner.   See Gibson v. Head, 646 S.E.2d 257, 260 (Ga. 2007); Hood v. State, 651 S.E.2d 88, 89 (Ga. 2007); Upshaw v. State, 570 S.E.2d 640, 643 (Ga. Ct. App. 2002).   The only ineffective assistance claim raised that does not concern Mr. Theodocion's post-conviction performance is the claim now asserted in Ground Three (c), which the Court considers on the merits in the following section.

**B.     Petitioner Is Not Entitled to Relief on Ground Three (c)**

Ground Three (c) alleges Mr. Theodocion was ineffective at trial because he failed to object to "the trial testimony of District Attorney Ashley Wright" that Silda "was 'a victim of child molestation.'"   (Doc. no. 1, p. 17.)   Petitioner procedurally defaulted his Ground Three (c) claim by failing to assert it in the first state habeas proceeding.   The Court declines to enforce the procedural bar out of an abundance of caution in light of Stephens v. Kemp, 846 F.2d 642, 651 (11th Cir. 1988), wherein the Eleventh Circuit determined cause existed for failing to raise an ineffective assistance claim in the first state habeas petition based on counsel's continued representation.   Id.   The court then relied on its merits analysis of the ineffective assistance claim to determine counsel's performance caused the "petitioner to suffer an 'actual and substantial disadvantage,'" thereby constituting the requisite prejudice to allow the defaulted claim to be heard by a federal habeas court.   Id.

29

The Court thus assumes cause for the default exists here, as in <u>Stephens</u>, based on trial counsel's continued representation through trial, direct appeal, and state habeas proceedings.  However, unlike <u>Stephens</u>, the Court finds below Mr. Theodocion's failure to object to the District Attorney's trial testimony did not cause Petitioner to suffer an actual and substantial disadvantage constituting the requisite prejudice.

      **1.**      **Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim**

The deferential standard of review under § 2254(d) of AEDPA does not apply to Ground Three (c) because the state habeas court denied the claim on procedural grounds instead of adjudicating the claim on its merits.   Nevertheless, even without AEDPA deference, "the standard for judging counsel's representation is a most deferential one." <u>Harrington v. Richter</u>, 562 U.S 86, 105 (2011).  Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under the first prong, Petitioner must show "counsel's representation fell below an objective standard of reasonableness."  <u>Strickland</u>, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."   <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001).   "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would not defend a particular client the same way."  <u>Philmore v McNeil</u>, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

30

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690 and Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995) (en banc)). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690. The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

### 2.    Petitioner Cannot Satisfy Either Prong of Strickland

Petitioner contends Mr. Theodocion should have objected when District Attorney Wright testified "as plain as day" to the ultimate issue that Silda "'was a victim of child molestation.'"  (Doc. no. 23, p. 6.)  Review of the circumstances and context of this testimony shows why Mr. Theodocion's decision not to object is reasonable and not ineffective.

On direct examination by Mr. Theodocion, Marline testified she met with District Attorney Wright before trial and explained Petitioner never attempted to commit incest with her and the allegations of him doing so were false.  (Doc. no. 10-8, pp. 78-79.)  Marline further testified District Attorney Wright told her she was lying.  (Id. at 79.)  District Attorney Wright testified in rebuttal, explaining there was no intent to interrogate or interview Marline.  (Id. at 135.)  When asked whether Marline spontaneously offered any information about her relationship with Petitioner, District Attorney Wright testified:

> I don't remember the specifics of what she had said.  I did make some notes and provided those notes in the form of an e-mail.  And upon today reviewing my e-mail, it indicated that she had wanted to talk about the charges pertaining to her a little bit and said that - - not the charges, the incident pertaining to her, and said that nothing had happened.  I told her that I didn't want to go into it.  And then she wanted to talk about anything pertaining to her sister.  The way it works, because the sister is the victim of child molestation, we don't talk about charges pertaining to other people with third parties.  It would be inappropriate to get into that sort of information and to tell her what somebody else might have said.  We try to, when people are potentially going to be witnesses, sort of neutralize them from what other people are saying so that we don't give them any suggestion about what is going on.  So I told her that I was not in a position to be able to discuss the allegations surrounding her sister with her at that time.

(Id. at 136.)  District Attorney Wright also denied accusing Marline of lying.  (Id.)   On cross-examination, District Attorney Wright explained she was asked to meet with Marline by a juvenile court judge considering a request from Marline to meet with her sisters.  District Attorney Wright also testified Marline informed her she believed Silda's accusations against Petitioner were false, to which she replied she could not discuss those accusations with Marline.  (Id. at 137-39.)

Considering the entire context of the testimony, rather than one phrase taken out of context by Petitioner, the Court concludes Petitioner cannot satisfy either prong of Strickland.  The Court starts with the recognition strategic decisions are entitled to a "heavy measure of deference," Strickland, 466 U.S. at 691, and are "'virtually unchallengeable.'" Provenzano, 148 F.3d at 1332.  Petitioner has not shown Mr. Theodocion's choice not to object was one no competent counsel would have made.  See Strickland, 466 U.S. at 690.

First, Mr. Theodocion made the strategic choice to call Marline and elicit testimony about the meeting and her statement to District Attorney Wright that Petitioner had not acted inappropriately toward her.  The effort was an attempt to undercut and discredit the damning evidence from Silda and Sindy that Petitioner kissed Marline on the mouth like a girlfriend or wife and would get into bed with her.  (Doc. no. 10-7, pp. 42-43, 106-15.)  The strategy, like any, had its downside in the risk of rebuttal testimony about what occurred during the meeting with District Attorney Wright.  The Court cannot in hindsight second-guess this choice arguably dictated by a reasonable trial strategy.

Once Marline's testimony opened the door, an objection to District Attorney Wright's rebuttal testimony likely would not have succeeded because there is no error in allowing a prosecutor to testify in rebuttal "only for impeachment purposes as to what a defense witness had said to the prosecutor."  Timberlake, 271 S.E.2d at 802; see also Martin v. State, 411 S.E.2d 788, 790 (Ga. Ct. App. 1991).  District Attorney Wright was not asked in the State's rebuttal for her opinion on the ultimate issue in the case, and as the entirety of the quoted passage shows, she clarified she was not investigating the case, and she was not in a position to discuss "allegations" and "charges."  (Doc. no. 10-8, p. 136.)

34

In any event, even if Mr. Theodocion had a valid objection to one turn of phrase, "[t]he failure to make every valid objection . . . will not necessarily take counsel's performance 'outside the wide range of professionally competent assistance,' which is the scope of permissible performance." Brewster v. Hetzel, 913 F.3d 1042, 1057 (11th Cir. 2019). Mr. Theodocion's decision not to object is not a choice no competent counsel would have made but instead falls within "the wide range of professionally competent assistance [passing] constitutional muster." Philmore, 575 F.3d at 1260.

Petitioner has also not shown the result of the trial would have been different had Mr. Theodocion objected. See Strickland, 466 U.S. at 694. Petitioner makes no attempt to analyze the statement in the overall context of the trial, instead stating in conclusory and hyperbolic fashion District Attorney Wright "stated, as plain as day, that the victim 'was a victim of child molestation. . . .'" and "effectively testified to the ultimate issue:  she 'was a victim of child molestation.'"  (Doc. no. 23, p. 6.)  As Respondent succinctly summarizes, the testimony "was nothing more than an explanation of why the district attorney would not discuss the case with the older sister, after the older sister asked about it, which clearly stems from the nature of the case itself."  (Doc. no. 20-1, p. 24.)

In light of the evidence offered against Petitioner at trial, the Court concludes Petitioner cannot show a reasonable probability the outcome would have been different if Mr. Theodocion had objected to the one phrase about which Petitioner complains. See Strickland, 466 U.S. at 694. Petitioner has not shown Mr. Theodocion's failure to object was deficient or prejudicial under Strickland, and the ineffective assistance claim in Ground Three (c) provides no basis for relief.

35

## VI.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 4th day of November, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA